Agnes, Peter W., J.
This is a motion by defendant, Garrett Engineering P.C. (“Garrett”), to compel production of documents from the plaintiff, the Town of Clinton (“Clinton”), related to arbitration between Clinton and Methuen Construction Co., Inc. (“Methuen”). In that arbitration, in which Garrett did not participate, Methuen was awarded a sum of $1,200,000 for delay and/or extra work claims stemming from a contract to construct a water filtration facility. Clinton has now brought this action to recover the money awarded to Methuen at the arbitration.
Prior to the arbitration, Clinton and Methuen, in an effort to amicably resolve the construction claim, entered into an alternative dispute resolution agreement. This agreement provided for a form of ADR known as “med-arb” in which a neutral, in this case Philip Bonanno, is engaged to serve initially as a mediator and then, if the dispute is not resolved by that process, as an arbitrator. Although the parties went forward with an attempt to mediate their dispute, that mediation ultimately proved unsuccessful. The parties then proceeded to arbitrate the dispute with Mr. Bonanno serving as arbitrator.
Through document requests and interrogatories, Garrett now seeks evidence relating to that arbitration. Clinton, while indicating that it has produced all evidentiary documents submitted during the arbitration, nevertheless asserts that G.L.c. 233, §23C provides a statutory privilege for all communications and submissions made by the parties to Mr. Bonanno while he was still acting as mediator. Clinton, in its opposition to Garret’s motion, attached an Appendix A which listed eighteen documents they believe remain confidential pursuant to G.L.c. 233, §23C.[2]
In their present motion, Garrett seeks an order compelling Clinton “to produce all documents related to the arbitration between the Plaintiff .and Methuen . . .” Garrett specifically argues that any claim of privilege under G.L.c. 233, §23C, “is of no force as the ‘mediation’ was abandoned and the proceeding no longer had the statutory protection owed it because it became binding arbitration.” Presumably, Garrett takes the position that because the mediation process came to an end and was followed by an arbitration process involving the same parties, all documents generated during the mediation now “relate” to the subsequent arbitration and should be available in discovery.
The purpose and value of the principle of confidentiality in mediation has been recognized numerous times in the vast literature on ADR. See e.g. A. Kirtley, The Mediation Privilege’s Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, the Process and the Public Interest, 1995 J.Disp.Resol. 1; E.D. Green, A Heretical View of the Mediation Privilege, 2 Ohio St. J. on Disp. Resol. 1; P.A. Kentra, Alternative Dispute Resolution Symposium: Hear No Evil, Speak No Evil: The Intolerable Conflict Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct, 1997 B.Y.U.L.Rev. 715. However, there is veiy little commentary or case law with respect to the Massachusetts mediation privilege statute. In relevant part, G.L.c. 233, §23C provides:
All memoranda, and other work product prepared by a mediator and a mediator’s case files shall be kept confidential and not subject to disclosure in any judicial . . . proceedings involving any of the parties to any mediation to which such materials apply. Any communication made in the course of and relating to the subject matter of any mediation and which is made in the presence of such mediator by any participant, mediator or other person shall be a confidential communication and not subject to disclosure in any judicial. . . proceeding ..."
In Leary v. Geoghan, 2002 WL 32140255 (2002), Justice Cynthia Cohen, sitting as a Single Justice of the Appeals Court on a matter pursuant to G.L.c. 231, § 118, para. 1, had occasion to observe that, “Unlike the mediation statutes in some other States, G.L.c. 233, §23C confers blanket confidentiality protection on the mediation process, including an explicit prohibition on disclosure in judicial proceedings, without listing any exceptions.” Justice Cohen also noted that G.L.c. 233, §23C, “is silent as to whether confidentiality ever may be waived, and if so by whom.”[3] Id. Finally, Justice Cohen noted that “our legislature has enacted a statute that plainly reflects a policy judgment in favor of confidentiality . . .” Id. This is consistent with the Massachusetts practice that favors the “amicable adjustments of disputes” by making settlement negotiations and offers to compromise inadmis *610 sible. See Modern Continental Construction Company, Inc. v. Zurich American Insurance Company, 21 Mass. L. Rptr. 114, 2006 Mass.Super. LEXIS 202 (2006) (van Gestel, J.), discussing Strauss v. Skurnik, 227 Mass. 173, 175 (1917).
As one commentator has explained:
The willingness of mediation parties to “open up” is essential to the success of the process. The mediation process is purposefully informal to encourage abroad ranging discussion of facts, feelings, issues, underlying interests and possible solutions to the parties’ conflict. Mediation’s private setting invites parties to speak openly, with complete candor. In addition, mediators often hold private meetings"caucuses"with each of the parties. More overt assurances of confidentiality are common. Mediators regularly require all present to promise to keep mediation discussions confidential, and routinely assure participants that the proceedings are confidential (whether or not legal protection is certain). Under such circumstances, mediation parties often reveal personal and business secrets, share deep-seated feelings about others, and make admissions of fact and law. Without adequate legal protection, a party’s candor in mediation might well be “rewarded” by a discovery request or the revelation of mediation information at trial. A principal purpose of the mediation privilege is to provide mediation parties protection against these downside risks of a failed mediation. Participation will diminish if perceptions of confidentialfiy are not matched by reality.
Kirtley, supra, at 8-10.
The importance of the principle of confidentiality in mediation is also reflected in its expression as an ethical principle within the rules on court-connected dispute resolution adopted by the Supreme Judicial Court. See Rules of the Supreme Judicial Court, Rule 1:18, Uniform Rules on Dispute Resolution Rule 9(h). Given that preservation of confidentiality is considered essential to the proper functioning of mediation, once communications within a mediation falls within the privilege conferred by statute, there is no policy justification for later allowing disclosure of information acquired during the mediation. Thus, everyone with access to mediation information is burdened by the privilege.
Here, Clinton continues to assert the privilege and denies any waiver, if such a waiver is even possible. When the parties struck a bargain to enter into an ADR process, they agreed that if mediation failed, they would move to arbitration. However, they made no further agreement to waive the privilege of confidentiality. The mere fact that the mediation portion of the ADR process did not result in an agreement or resolution does not serve as an implicit waiver of the privilege. Under the circumstances of this case, there has been no waiver of the blanket confidentiality privilege conferred by G.L.c. 233, §23C, and therefore, to the extent that Garrett seeks documents produced during the mediation that were never resubmitted or otherwise independently utilized during the arbitration, Garrett’s motion must be DENIED.
ORDER
For the foregoing reasons, Garrett’s Motion to Compel Production of Documents is DENIED.

This list included such documents as the Alternative Dispute Resolution Agreement dated August 26, 2003, an Initial Position Statement of the Town of Clinton, and a Memorandum of Legal Points Submitted by the Town of Clinton in accordance with the request of the Mediator. It also should be noted that Garrett does not maintain that the statutory privilege does not apply to the mediator in this case.

A New York trial court, when faced with a similarly worded mediation statute concluded that a party cannot waive confidentiality and therefore could not subpoena records from a mediation which he attended. People v. Snyder, 492 N.Y.S.2d 890, 891-92 (Sup.Ct. 1985). See also Ayash v. Dana Faber-Cancer Inst. 443 Mass. 367, 397 and n.28 (2002) (the policy underlying the Massachusetts peer review privilege set forth in G.L.c. 111, §204 leads to the conclusion that it cannot be waived).